IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARITIE HENNIG,

    Petitioner,               No. 2:05-cv–01931 ALA (HC)

    vs.

DEBORAH L. PATRICK,

    Respondent.*             <u>ORDER</u>

    Pending before this Court are Charitie Hennig's ("Petitioner") "Amended Petition for Writ of Habeas Corpus" (Doc. 14), filed on February 1, 2006; Respondent's "Answer to Petition for Writ of Habeas Corpus" (Doc. 21); and Petitioner's "Traverse to Answer to Petition for Writ of Habeas Corpus" (Doc. 44). For the reasons discussed below, Petitioner's application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254(a) is denied.

**I**

**A**

    Petitioner was found guilty in the Solano County Superior Court by a jury of voluntary

---

*Deborah L. Patrick is substituted for her predecessor, Gwendolyn Mitchell, as the warden where the prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

manslaughter[1] in violation of California Penal Code Section 192, and assault on a child causing death, in violation of California Penal Code Section 273ab. On January 14, 2002, she was sentenced to serve 25 years to life imprisonment. Petitioner filed a direct appeal from the judgment and sentence before the California Court of Appeal for the First Appellate District, Division Five. The Court of Appeal affirmed the judgment and sentence in an unpublished opinion filed on April 4, 2003. Petitioner filed a petition review in the California Supreme Court. In her petition for review, she asserted that the trial court erred in refusing to instruct the jury on involuntary manslaughter, and that her sentence of 25 years to life constituted cruel and unusual punishment. The Supreme Court denied her petition on August 31, 2005. The Supreme Court denied the petition for review on June 18, 2003.

**B**

The California Court of Appeal summarized the facts presented at trial as follows in its unpublished decision, *People v. Charitie Lovee Hennig*, No. A097722, 2003 LEXIS 3377, at *2-7 (Cal. Ct. App. (Apr. 4, 2003).

> In September 2000, Mark and Casandra Dana hired defendant to baby-sit, on weekdays, for their four children, including nine-month-old Matthew. Matthew was a healthy, normal child, who had a history of intermittent constipation, which was neither severe nor uncommon. He was likely to be particularly fussy when trying to pass a hard stool. Mrs. Dana informed defendant of Matthew's intermittent constipation.
>
> At approximately 7:30 a.m. on February 5, 2001, Mrs. Dana dropped her four children off at defendant's home. Between 8:30 and 9:00 a.m., Mr. Dana discovered his mother, Dora, beating frantically on the front door of the Dana's home. Dora was "hysterical," saying something had happened at defendant's house and one of the babies was not breathing. Mr. Dana and his mother drove immediately to defendant's home where they found the front door open. When they entered the living room, Mr. Dana could hear defendant in the far bedroom. When Mr. Dana entered that bedroom, he found defendant seated on the bed, her demeanor

---

[1] Petitioner was charged in Count One with the crime of murder in violation of California Penal Code Section 187. She was found not guilty of murder, but guilty of voluntary manslaughter, a lessor included offense.

PDF created with pdfFactory trial version www.pdffactory.com

"frantic." Defendant was on the telephone trying to get help. Matthew was lying on defendant's lap, with his eyes closed and head back. He was blue around the mouth, unresponsive and appeared to be dead. After an ambulance arrived, the paramedics unsuccessfully attempted to resuscitate Matthew. He was pronounced dead about an hour after his arrival at the hospital.

Solano County Sheriff's Department Detective Gary Elliott conducted a tape-recorded interview of defendant at the hospital.[2] Defendant was "visibly upset." Defendant told Elliott that Matthew was "fussy" and tired, so she laid him in a portable crib in the living room and covered him with a blanket. She also said Matthew was "congested." While seated in the living room, defendant read to the other children. After answering the telephone, she returned to the living room, picked Matthew up and found he was limp, cold and "all white." After unsuccessfully trying to resuscitate him, defendant called 911.

Forensic pathologist Mark Super reviewed X-rays taken of Matthew at the hospital and performed an autopsy. The X-rays revealed "skull fractures." A single golf-ball-sized, hard stool was found in Matthew's diaper. Because the stool was considerably larger than Matthew's anus, Super opined that Matthew may have been fussy while passing it. There was a large bruise over the entire back of Matthew's head. The autopsy revealed a complex branching fracture of the back of Matthew's skull with evidence of hemorrhage inside the skull. The skull was deformed and flattened over a broad surface. The fracture signified a "severe" injury was significant evidence that the head had sustained a very severe impact. The fractures extended from the occipital bone to the spinal cord. Matthew also suffered subdural hematomas (blood clots on the brain), evidence of very severe shear forces that cause blood vessels in the brain to leak and cause blood clots on the brain. Optic nerve sheath hemorrhage also indicated blunt force trauma. Super opined that Matthew died from blunt force head injuries. After the infliction of injury, Matthew would have become immediately unconscious and his injury would have been immediately apparent.

Super opined that Matthew's injuries were caused by a single, "very severe, accelerated force against a hard, broad surface," likely by holding him by the legs and swinging him "with all one's might" into the floor or wall. Because the fractures were complex and over a wide area, Super opined that Matthew's injuries could not have been caused by a simple fall or a routine household accident. Super said that Matthew's injuries could not have been caused by a simple fall or a routine household accident. Only a catastrophic accident, such as a huge bookcase falling on

---

[2] The audiotape was played for the jury but not reported.

PDF created with pdfFactory trial version www.pdffactory.com

Matthew or his fall from a height of several stories could cause such injuries. Super also said that Matthew's injuries were inconsistent with being found unconscious in a playpen or crib.

Following the autopsy, Super inspected defendant's home. He determined that Matthew's head could have struck the hard walls or the linoleum covered cement floor. Because nothing in the house suggested accidental injury, Super concluded that injury was "willfully inflicted" on Matthew "at great force." Super rejected the idea that an adult falling on Matthew could cause his injuries, regardless of the weight of the adult.

At the time of Matthew's death, defendant was pregnant. Certified nurse-midwife Denise Downing testified that defendant then weighed 234 pounds. Downing said that in many pregnant women, as the fetus grows, the woman's center of gravity is displaced, and she can lose her balance.

Defense forensic pathologist Sharon VanMeter reviewed Super's autopsy report, X-rays, and autopsy photographs of Matthew. She also reviewed Super's preliminary hearing testimony. She agreed with Super that Matthew suffered a skull fracture caused by blunt force trauma. She also agreed that such a fracture required either acceleration of the body against a hard surface or a hard object hitting the head, such as a baseball bat or two-by-four. She found reasonable Super's opinion that Matthew's head hit an object rather than being hit by the object. She said Matthew's pathologic findings were not consistent with a normal, alert child being placed in a playpen and shortly thereafter being found to be unresponsive. VanMeter also found reasonable Super's opinion that Matthew's injuries were sustained after he was swung by his feet or legs such that his head hit a floor or wall. In response to a hypothetical question, VanMeter testified that it was reasonably possible that if a 230-pound woman was carrying Matthew while walking quickly and then tripped, fell and hit a hard floor, landing with all her body weight on top of Matthew, enough force would be generated to cause the type of fracture suffered by Matthew. On cross-examination, she conceded that she had neither observed this in her work as a pathologist nor seen any published medical literature regarding such a scenario.

## C

Petitioner filed a petition for state habeas corpus relief in pro se in the Solano County Superior Court. It was denied August 4, 2004. She then filed a petition for habeas corpus before the California Court of Appeal. It was denied on procedural grounds on August 27, 2004. The Court of Appeal's order reads as follows:

4

PDF created with pdfFactory trial version www.pdffactory.com

> The petition for writ of habeas corpus is denied.  (*In re Clark* (1995) 5 Ca. 4th 750, 782-799; *In re Robbins* (1998) 18 Cal. 4th 770, 780; *In re Swain*, (1949) 34 Cal 2d 300, 303-04 [vague, conclusory allegations are insufficient to warrant issuance of a writ of habeas corpus].)

Petitioner filed a petition for a writ of habeas corpus before the California Supreme Court. She alleged five grounds: (1) the autopsy performed on the victim was incomplete; (2) the prosecutor committed misconduct in her closing argument; (3) the trial court erred in its instructions to the jury; (4) petitioner's trial counsel was ineffective and (5) cumulative errors. Her petition for habeas corpus relief was summarily denied by the California Supreme Court on August 31, 2005.

## D

Petitioner filed an application for a writ of habeas corpus in pro se on September 23, 2005 in this Court pursuant to 28 U.S.C. § 2254(a).  On February 1, 2006, her attorney filed a seven-page pleading as an "amended petition for a writ of habeas corpus."  In her amended application, Petitioner asserts the following claims: (1) Petitioner's trial counsel ineffectively represented her at her trial; (2) the failure of the prosecutor to prove each element of the crime of assault upon a child resulting in death violated Petitioner's right to due process under the Fourteenth Amendment; (3) the trial court violated her right to due process under the Fourteenth Amendment by failing to instruct the jury on the offense of involuntary manslaughter, a lessor included offense to the crime of murder; (4) the prosecutor committed misconduct in her argument to the jury in violation of the Due Process Clause; (5) the 25 years to life sentence imposed by the trial court violated the Eighth Amendment of the United States Constitution.

In the answer, Respondent conceded that Petitioner's application was timely filed, and that the federal constitutional claims were exhausted by being presented before the California Supreme Court in the petition for review of the judgment and sentence, and in the petition for a writ of habeas corpus filed in that Court.  In the answer, Respondent denied each of Petitioner's federal constitutional claims.

PDF created with pdfFactory trial version www.pdffactory.com

Case 2:05-cv-01931-ALA   Document 46   Filed 08/29/08   Page 6 of 11

**II**

In reviewing a state prisoner's application for a writ of habeas filed pursuant to § 2254(a), this Court is mindful that Congress has decreed that a writ "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**A**

**1**

In her amended application for a writ of habeas corpus, Petitioner contends that her Sixth Amendment right to effective legal representation was violated by her trial counsel. Am. Pet. 6.[3] She first asserts that her counsel failed to exercise peremptory challenges to strike a juror who was a 911 emergency operator and another who was a foster parent for abused children. Petitioner argues that trial counsel failed to use peremptory challenges to strike these jurors "from the jury pool." As Respondent notes in the answer, "[t]here is no showing that either of these jurors actually sat on the jury nor is there any record regarding their responses to questions by counsel and by the court." Petitioner's four-page traverse does not respond to Respondent's challenge regarding the absence of any factual support for this contention. Petitioner has failed to overcome the strong presumption that counsel exercised sound strategy and tactics in his or her's representation of the accused at trial. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Petitioner has failed to demonstrate that the state court applied the *Strickland* principles in an objectively unreasonable manner in rejecting this contention.

---

[3]All reference herein to Petitioner's amended petition will be cited as Am. Pet ____ (page number).

6

PDF created with pdfFactory trial version www.pdffactory.com

**2**

Petitioner also asserts that she was ineffectively represented because her trial counsel "failed to provide his own expert witness with the lab reports that would show the autopsy record relating to the victim's cause of death was incomplete." Am. Pet. 6. Again, Petitioner has failed to demonstrate that the autopsy performed on the victim was incomplete or incompetently performed. The record shows that Petitioner's trial counsel presented the testimony of a specialist in pathology. She testified that she reviewed the autopsy report, the X-rays, and photographs of the victim, as well as, the autopsy surgeon's testimony at the preliminary hearing. The defense pathologist testified that she agreed with the autopsy surgeon that the victim suffered a skull fracture that was caused by either accelerated force of its body against a hard surface, or an object hitting its head with the same amount of force.

Petitioner has failed to show that another expert witness would have been able to testify that the autopsy was incompetently performed or that the pathologist's report was incomplete. Accordingly, this Court cannot conclude from this record that the state court's rejection of Petitioner's Sixth Amendment claim was objectively unreasonable under *Strickland*.

**3**

Petitioner further maintains that her trial counsel was ineffective because she failed "to introduce at trial a defense mental health expert who could have testified about petitioner's mental state at the time the crime was committed." Am. Pet. 6. Petitioner failed to submit a declaration or affidavit from an expert that Petitioner's mental state would support her theory of defense that the victim was fatally injured because she accidentally fell on the victim. Accordingly, Petitioner has failed to demonstrate that her trial counsel was ineffective in failing to present a mental health expert under the Supreme Court's *Strickland* decision.

**III**

Petitioner argues that "the prosecutor failed "to prove every element required for the assault conviction." Am. Pet. 5. This bold assertion is not supported by any citation to the record

7

PDF created with pdfFactory trial version www.pdffactory.com

that demonstrates that the prosecutor "shifted the burden of proof to the defense." Am. Pet. 5.

Petitioner also alleges that the prosecutor "improperly comment[ed] on [the] right to remain silent." *Id.* Petitioner's counsel also asserted in her amended application for a writ of habeas corpus filed in this Court that, in her argument to the jury, the prosecutor stated "that the defense has not even come up with a decent defense." This Court has read the opening and closing arguments of the prosecutor. The passage set forth in quotation marks by Petitioner's counsel does not appear in the reporter's transcript.

Petitioner's counsel also asserted in her amended application that "[t]he prosecutor also engaged in misconduct when she made reference to petitioner's silence as 'showing guilt' despite Petitioner's right to remain silent." This is also a flagrant misrepresentation of the record. The prosecutor did not improperly comment on Petitioner's right to remain silent. Notwithstanding the fact that Respondent stated in the answer that "[a] review of both the opening and closing arguments by the district attorney in this case fails to show any comments of this sort by the prosecutor," Respt's Answer 14, Petitioner's traverse did not discuss the alleged prosecutorial misconduct or cite any portion to the record to support this contention. Petitioner has failed to demonstrate that the prosecutor made improper comments to the jury.

**IV**

**A**

Petitioner contends that "[t]he trial court committed reversible error of constitutional dimensions when it refused the defense request to instruct the jury on involuntary manslaughter, a lesser included offense to murder." Am. Pet. 3. The trial court refused Petitioner's request that the jury be instructed on involuntary manslaughter. It concluded that she had failed to present evidence that the victim's death resulted from the failure of Petitioner to exercise due caution and circumspection. The trial court concluded that, assuming that there was evidence in the record to support Petitioner's theory of defense, i.e., that the victim's injury was the result of an accident, then she should be found not guilty because she did not act with malice nor did she kill the victim

8

PDF created with pdfFactory trial version www.pdffactory.com

1 during a sudden quarrel or heat of passion.  Rep's Tr. 249.

2 　　　The prosecutor's theory was that the evidence supported a conviction for the non-capital
3 offense of second degree murder.  In *Bashor v. Risely*, 730 F.3d 1228 (9th Cir. 1984), the Ninth
4 Circuit held that the "[f]ailure of a state court to instruct on a lesser offense [in a non-capital case]
5 fails to present a federal constitutional question and will not be considered in a federal habeas
6 corpus proceeding."  *Id.* at 1240.  *See also*, *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000)
7 (we adhere to the law as stated in *Bashor* and its predecessors).

8 　　　In *Bashor*, the Ninth Circuit stated in *dictum* that the rule that the failure to instruct on a
9 lessor included offense does not present a federal constitutional question, "may not apply to every
10 habeas corpus review, because the criminal defendant is also entitled to adequate instructions on
11 his or her theory of defense."  *Id.* at 1240.  Here, substantial evidence was not presented to
12 support a charge of involuntary manslaughter.  The defense's theory was that Petitioner was not
13 guilty because the homicide was accidental.  She did not offer any evidence that the victim's fatal
14 injuries were the result of negligence.  Accordingly, Petitioner has failed to show federal
15 constitutional error.  *See Solis*, 219 F.3d at 929.

16 **B**

17 　　　Petitioner further argues in her "amended petition" that the trial court erred because it "did
18 not instruct the jurors that they could consider 'heat of passion' when evaluating whether
19 petitioner was guilty of Penal Code § 273."  Am. Pet. 4.  Petitioner has failed to cite any authority
20 that "heat of passion" is an element of § 273ab.  Furthermore, no evidence was presented to the
21 jury that she acted in the "heat of passion."  As noted above, her theory of defense was that the
22 death of her victim was caused by an accidental fall.

23 **V**

24 　　　Petitioner maintains that her 25 years to life sentence is cruel and unusual punishment in
25 violation of the Eighth Amendment to the United States Constitution.  Her whole argument for
26 this proposition reads as follows:

9

PDF created with pdfFactory trial version www.pdffactory.com

> A punishment that is "grossly out of proportion to the severity of the crime" violates the Eighth Amendment to the United States Constitution. *Gregg v. Georgia*, 428 U.S. 153 (1976). *See also Solem v. Helm*, 463 U.S. 277, 279-81 (1983) (a sentence "significantly disproportionate to [the] crime . . . is prohibited by the Eighth Amendment.").

The Supreme Court noted in *Lockyer v. Andrade*, 538 U.S. 63 (2003) that the disproportionality standard is unclear. It instructed as follows:

> Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced. . . . Here, however, the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle–the "precise contours of which are unclear."

*Id.* at 76 (internal citations and internal quotation marks omitted). In *Andrade*, the Supreme Court upheld two consecutive terms of 25 years to life based on the conviction of the defendant on two counts of petty theft under California's three strikes law. The defendant in *Andrade* was found guilty of stealing approximately $150 in video tapes. *Id.* at 70.

The Court also stated in *Andrade* that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77. California Penal Code § 273ab provides that

> [a]ny person who, having the care or custody of a child who is under eight years of age assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in a child's death shall be punished by imprisonment in the state prison for 25 years to life. Nothing in this section shall be construed as effecting the applicability of subdivision (a) of Section 187 or Section 189.[4]

The United States Constitution reposes the police power in the States–including prescribing the appropriate punishment for the killing of a human being. In the exercise of this power, the California Legislature has equated the punishment for the killing of a child under eight

---

[4] California Penal Code Section 187 defines the crime of murder as "the unlawful killing of a human being, or a fetus, with malice aforethought.
California Penal Code Section 189 defines first and second degree murder.

10

PDF created with pdfFactory trial version www.pdffactory.com

years of age by a caretaker with a force likely to produce great bodily injury with the killing of any human being with premeditation, deliberation, and malice aforethought.

The state courts did not err in determining that the punishment imposed upon the petitioner was not grossly disporportionate or an unreasonable application of clearly established law as determined by the Supreme Court of the United States.

### Conclusion

The state court's rejection of each of Petitioner's federal constitutional claims was not "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Therefore, it is hereby ORDERED, that Petitioner's application for a writ of habeas corpus is DENIED. The clerk is directed to enter judgment and close the case.

/////

DATED: August 29, 2008

/s/ Arthur L. Alarcón  
UNITED STATES CIRCUIT JUDGE  
Sitting by Designation

PDF created with pdfFactory trial version www.pdffactory.com